O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAZANJIAN BROS., INC., a California corporation, | ) ) ) | Case No. CV 14-05625 DDP (ASx) |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | ) ) ) | |
| NEILA JAZIRI; NEILA VINTAGE & DESIGN; ART WORLD, | ) ) ) | [Dkt. No. 8] |
| Defendants. | ) ) ) | |

Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). (Dkt. No. 8.) Having considered the parties' submissions, the Court DENIES the Motion and adopts the following order.

**I.   BACKGROUND**

Kazanjian Bros., Inc. ("Plaintiff") is a California corporation that operates a high-end jewelry business. (Opposition to Motion to Dismiss ("Opp."), Dkt. No. 11, at 1.) Plaintiff operates a store and showroom in Beverly Hills, California. (Id.) Defendant Neila Jaziri ("Jaziri") is a French citizen residing in Paris, France. (Mot. at 3.) Jaziri is the sole manager and owner

1  of Art World and Neila Vintage & Design (collectively with Jaziri,
2  "Defendants"). (Id.) Art World is a business registered and
3  organized in France with its principal place of business in Paris,
4  France. (Id.) Art World operates a retail vintage fashion
5  boutique business in Paris, France known as Neila Vintage & Design.
6  (Id.)

7      Plaintiff alleges the parties have developed a mutually
8  beneficial relationship based on the sale and purchase of high-end
9  jewelry, where Plaintiffs would sell Defendants items for resale to
10 Defendants' international clientele. (Opp. at 5-6.) This
11 relationship began in August 2011 and went through 2013. (Id. at
12 6.) Prior to the transaction at issue in this case, Plaintiff
13 alleges Defendants purchased a platinum necklace from Defendants in
14 August 2011 and a sapphire ring from Defendants in September 2011.
15 (Id. at 5.) During the course of this business relationship,
16 Plaintiff alleges, the parties exchanged over 500 emails. (Id.)
17 Defendants also came to Plaintiff's store in Beverly Hills on April
18 27, 2012, to look at jewelry pieces in person. (Id. at 5-6.)
19 Although Defendants claim that all contact concerning the sale of
20 any piece of jewelry was initiated by Plaintiff and that Defendants
21 never viewed jewelry in person in California (see Declaration of
22 Neila Jaziri ("Jaziri Decl."), Dkt. No. 9-1, ¶¶ 12, 14, 15),
23 Plaintiff claims that Defendants reached out to Plaintiff multiple
24 times to inquire whether Plaintiff had particular items for sale.
25 (Opp. at 6-8.)

26     The present dispute concerns Plaintiff's sale of a Van Cleef &
27 Arpels diamond bracelet ("the bracelet") to Defendants. Plaintiff
28 alleges Defendant agreed to purchase the bracelet from Plaintiff on

June 11, 2013, for the sum of $660,000.  (<u>Id.</u> at 2.)  On that date,
Plaintiff's agent delivered the bracelet to Defendants in Paris,
France.  (<u>Id.</u>)  The payments were to be made in two installments to
Plaintiff's bank account in Beverly Hills, CA.  (<u>Id.</u>)  Defendants
signed an invoice that stated the purchase price was $660,000.
(<u>Id.</u> at 2-3; Exh. A to Declaration of Jasmine Rafati ("Rafati
Decl."), Dkt. No. 11-2.)

Plaintiff alleges Defendants never made the payments as
scheduled.  (<u>Id.</u> at 3.)  Instead, Plaintiff states, during several
months of dialogue over the payments, Defendants finally made two
wire transfers to Plaintiff's bank account totaling $200,000.
(<u>Id.</u> at 3-4.)  The last payment Plaintiff allegedly received was
made on April 18, 2014.  (<u>Id.</u> at 4.)

On June 2, 2014, Plaintiff filed a complaint in California
Superior Court ("Complaint"), stating causes of action for breach
of written and oral contract, fraud, conversion, and trespass to
chattels.  (Dkt. No. 1-1.)  All causes of action arise from the
single transaction detailed above - Plaintiff's sale of the
bracelet to Defendants.  <u>Id.</u>  On July 21, 2014, Defendants removed
this action to federal court under diversity jurisdiction.  (Dkt.
No. 1.)  Defendants now move to dismiss the action for lack of
personal jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(2).  (Dkt. No. 8.)

**II.  LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides that a court
may dismiss a suit for lack of personal jurisdiction.  The
plaintiff has the burden of establishing that jurisdiction exists.
<u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where,

1   as here, the motion is based on written materials rather than an

2   evidentiary hearing, "the plaintiff need only make a prima facie

3   showing of jurisdictional facts." <u>Caruth v. International</u>

4   <u>Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1977); <u>Pebble</u>

5   <u>Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Although

6   the plaintiff cannot simply rest on the bare allegations of its

7   complaint, uncontroverted allegations in the complaint must be

8   taken as true." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d

9   797, 797 (9th Cir. 2004) (internal quotations and citation

10  omitted).  Conflicts between parties over statements contained in

11  affidavits must be resolved in the plaintiff's favor.   <u>Id.</u>

12      District courts have the power to exercise personal

13  jurisdiction to the extent authorized by the law of the state in

14  which they sit.  Fed. R. Civ. P. 4(k)(1)(A); <u>Panavision Int'l, L.P.</u>

15  <u>v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998).  Because

16  California's long-arm statute authorizes personal jurisdiction

17  coextensive with the Due Process Clause of the United States

18  Constitution, <u>see</u> Cal. Civ. Code § 410.10, this Court may exercise

19  personal jurisdiction over a nonresident defendant when that

20  defendant has "at least 'minimum contacts' with the relevant forum

21  such that the exercise of jurisdiction 'does not offend traditional

22  notions of fair play and substantial justice.'" <u>Schwarzenegger</u>,

23  374 F.3d at 800-01 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S.

24  310, 316 (1945)).  The contacts must be of such a quality and

25  nature that the defendants could reasonably expect to be "haled

26  into court there." <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286,

27  297 (1980).

28

4

1    There are two types of personal jurisdiction: general and
2  specific.  Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th
3  Cir. 1995).  A court may exercise general personal jurisdiction
4  over a defendant when the defendant's contacts are "so continuous
5  and systematic as to render them essentially at home in the forum
6  state."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct.
7  2846, 2851 (2011) (internal quotations omitted).

8    Specific personal jurisdiction may be found when the cause of
9  action arises out of the defendant's contact or activities in the
10  forum state.  See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th
11  Cir. 1991).  The Ninth Circuit has set forth the following three-
12  pronged test to determine whether specific personal jurisdiction
13  exists: "(1) The non-resident defendant must purposefully direct
14  his activities or consummate some transaction with the forum or
15  resident thereof; or perform some act by which he purposefully
16  avails himself of the privilege of conducting activities in the
17  forum, thereby invoking the benefits and protections of its laws;
18  (2) the claim must be one which arises out of or relates to the
19  defendant's forum-related activities; and (3) the exercise of
20  jurisdiction must comport with fair play and substantial justice,
21  i.e. it must be reasonable."  Lake v. Lake, 817 F.2d 1416, 1421
22  (9th Cir. 1986).  If the plaintiff succeeds in establishing the
23  first two prongs, the burden then shifts to the defendant to
24  "present a compelling case" that the court's assertion of
25  jurisdiction would be unreasonable.  Burger King Corp. v.
26  Rudzewicz, 471 U.S. 462, 476-78 (1985).
27  ///
28  ///

III.   DISCUSSION

     Plaintiff acknowledges that the Court does not have general

personal jurisdiction over the Defendants.  (Opp. at 8.)  The sole

issue is whether the Court has specific jurisdiction over

Defendants.

     **A. Purposeful Availment or Purposeful Direction**

     The first prong of the specific jurisdiction test is satisfied

by either purposeful availment or purposeful direction.  These are

two distinct concepts: "A purposeful availment analysis is most

often used in suits sounding in contract.  A purposeful direction

analysis, on the other hand, is most often used in suits sounding

in tort." Schwarzenegger, 374 F.3d at 802 (internal citations

omitted).  The Ninth Circuit has held that the first prong of the

specific jurisdiction test "may be satisfied by purposeful

availment of the privilege of doing business in the forum; by

purposeful direction of activities at the forum; or by some

combination thereof." Yahoo! Inc. v. La Lique Contre Le Racisme Et

L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

     The parties appear to dispute which test should apply.  In

their Motion, Defendants contend that the purposeful direction

analysis applies.  (Mot. at 6.)  Plaintiff, in its opposition

papers, argues that both the purposeful direction and the

purposeful availment tests apply and are satisfied.  (Opp. at 11.)

     Here, because Plaintiff's intentional tort claims arise out of

the contract for the necklace, the Court will apply the purposeful

availment test. Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir.

1990) (applying the purposeful availment test in a case where,

although some of the claims sounded in tort, all arose out of the plaintiff's contractual relationship with the defendants).

### B. Purposeful Availment

A defendant purposefully avails itself to the laws a forum state when that defendant "perform[s] some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).  In determining purposeful availment, the Court should consider factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479.   "[T]he purposeful availment analysis turns upon whether the defendant's contacts are attributable to actions by the defendant himself, or conversely to the unilateral activity of another party." Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986) (internal quotations omitted).

Plaintiff argues that Defendants are subject to personal jurisdiction because Defendants willingly committed themselves to agreements with Plaintiff to purchase and pay for the bracelet, solicited other business with Plaintiff by sending Plaintiff hundreds of emails over several years, and coming in person to California to look at jewelry for possible purchase and resale. Defendants argue that there are insufficient contacts to constitute purposeful availment, contending that the dispute arises from an isolated transaction - the sale of the bracelet - and that the major aspects of the sale did not take place in California. Plaintiff and Defendants also dispute which party initiated contact

during their relationship: Defendants contend that Plaintiff was always the one to initiate contact, whereas Plaintiff contends that Defendants reached out to Plaintiff many times on their own accord.

The Court resolves conflicts in the parties' affidavits in Plaintiff's favor, and finds that Defendants did purposefully avail themselves of the laws of California.  Plaintiff's affidavits show that the parties had a multi-year relationship that began in August 2011 and continued through 2013.  The affidavits state that the parties exchanged hundreds of emails in which Defendants contacted Plaintiff's salesperson multiple times in inquiring after the availability of various types of jewelry for sale.  These contacts resulted in the sale of three items over the years, and were such that when Jaziri traveled to California in 2012, she informed Plaintiff and visited Plaintiff's showroom to view items for sale.

The factual allegations advanced by Plaintiff do not show unilateral activity on Plaintiff's part; rather, they show that Defendants affirmatively contacted Plaintiff multiple times to inquire into purchasing items from Plaintiff, and that the relationship was a mutual one.  Defendants knew Plaintiff operated in California and that they were agreeing to purchase items for sale in California; they should not be surprised that they might be subject to liability in California for allegedly failing to pay for items as agreed.

## C.  Arising out of Forum-Related Activities

Under the second prong of the specific jurisdiction test, the Court must determine whether the asserted claims arise out of or was related to the defendant's contact with the forum state.  This requirement is measured in terms of "but for" causation.  <u>Bancroft</u>

& Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th
Cir. 2000).

Here, Plaintiff has provided little evidence regarding the
origins of this transaction, the Court finds that the harm does
relate to Defendants' California-related activities.  Plaintiff
does not provide any facts with respect to how the contract for
sale of the bracelet arose; instead, Plaintiff states that the
parties came to an agreement whereby Plaintiff would deliver the
bracelet to Defendants in France, and Defendants would wire the
payments for the bracelet to Plaintiff in California.  Despite this
omission, the Court finds that but for Defendants' contacts with
Plaintiff in California and the existing relationship between the
parties, the sale - and hence the injury to Plaintiff - would not
have occurred.

## D.  Reasonableness

Because Plaintiff has satisfied the first two prongs, the
burden shifts to Defendants to rebut the presumption that
jurisdiction is reasonable by presenting a compelling case that
specific personal jurisdiction would be unreasonable.  Burger King,
471 U.S. at 477 ("[the defendant] must present a compelling case
that the presence of some other considerations would render
jurisdiction unreasonable").  To determine reasonableness, the
Court considers: (1) the extent of purposeful interjection into the
forum state; (2) the burden on the defendant; (3) the conflict with
the sovereignty of the defendant's state; (4) the forum state's
interest in the suit; (5) the most efficient judicial resolution of
the dispute; (6) the convenience and effectiveness of relief for
the plaintiff; and (7) the existence of an alternative forum.  Id.

at 475.  All seven factors must be weighed, and no single factor is dispositive.  <u>Ziegler v. Indian River Cnty.</u>, 64 F.3d 470, 475 (9th Cir. 1995).

### 1. Purposeful Interjection

The first factor is the extent of purposeful interjection into the forum state.  Here, the factor weighs in favor of finding jurisdiction.  Defendants established an ongoing relationship for approximately two years with Plaintiff, which operates its business in California.  Defendants affirmatively reached out to Plaintiff to inquire about the purchase of jewelry, knowing that Plaintiff's store was located in California.

### 2. Burden on the Defendant

The second factor is the burden on the defendant in defending in the forum state.  Where "a defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction." <u>Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.</u>, 828 F.2d 1439, 1444 (9th Cir. 1987) (internal quotations omitted).  The burden of a defendant is increased when it is ordered to defend itself in the foreign legal system of another country.  <u>Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal. Solano Cnty.</u>, 480 U.S. 102, 114 (1987).  Here, Defendants are an individual located in France and a small French business that is owned by said individual.  There might be a burden for Defendants to litigate in the United States, a foreign jurisdiction to Defendants, and in a foreign language. However, Defendants' sole argument on this point is that travel would be expensive and time-consuming.  (Mot. at 7-8.)  Plaintiff argues that the actual burden Defendants will suffer is not great

1  due to the "advent of modern technology," and that most discovery
2  and document production can be handled without necessitating
3  Defendant's physical presence in the United States.  (Opp. at 18.)
4  Defendants' described burden is a relatively mild one; however,
5  this factor does weigh against finding jurisdiction.
6           **3.  Sovereignty Conflict**
7       The third factor is the extent of conflict with the
8  sovereignty of the defendant's state.  As an initial matter, "a
9  foreign state presents a higher sovereignty barrier than another
10 state within the United States." Fed. Deposit Ins. Corp., 828 F.2d
11 at 1444.  Thus, "great care and reserve should be exercised when
12 extending our notions of personal jurisdiction into the
13 international field." Asahi Metal Indus., 480 U.S. at 115.
14 However, Defendants do not address this factor in their Motion.
15 Thus, the Court will not weigh this factor either in favor of or
16 against finding jurisdiction in its analysis.
17          **4.  Forum State's Interest**
18       The fourth factor is the forum state's interest in
19 adjudicating the dispute.  "California maintains a strong interest
20 in providing an effective means of redress for its residents who
21 are tortiously injured." Core-Vent Corp. v. Nobel Indus. AB, 11
22 F.3d 1482, 1489 (9th Cir. 1993).  Plaintiff is a California
23 business that has been injured.  Thus, this factor weighs in favor
24 of finding jurisdiction.
25          **5.  Most Efficient Judicial Resolution**
26       The fifth consideration is the most efficient judicial
27 resolution of the dispute.  "In evaluating this factor, we have
28 looked primarily at where the witnesses and the evidence are likely

to be located." <u>Core-Vent</u>, 11 F.3d at 1489.  Defendants argue that
a French official who is an expert on import duty taxes in France
would be an important potential witness in this suit.  Defendants
further point out that Jaziri resides in France.  Plaintiff argues
that a large part of the evidence, as well as witnesses who were
involved in selling the bracelet, reside in California.  The Court
finds that this factor is neutral with respect to jurisdiction.

### 6.  Plaintiff's Interest

The sixth factor is the plaintiff's interest in convenient and
effective relief.  "Neither the Supreme Court nor our court has
given much weight to inconvenience to the plaintiff." <u>Core-Vent</u>,
11 F.3d at 1490.  Plaintiff is located in California and has no
evident ties to France other than having sold items to Defendants.
However, it is unclear whether a judgment for Plaintiff in French
court would be any less effective than a judgment here.  On
balance, this factor weighs in favor of finding jurisdiction.

### 7.  Existence of Alternative Forum

The final factor is the availability of an alternate forum.
The plaintiff bears the burden of proving the unavailability of an
alternate forum. <u>Fed. Deposit Ins. Corp.</u>, 828 F.2d at 1445.
Defendants argue that France is a suitable alternate forum.  In
fact, it appears that Plaintiff is already pursuing a remedy
against Defendants in France.  Although Plaintiff points out that
California would be a more convenient forum, it has not proved that
it would be barred from obtaining a judgment against Defendants in
France.  This factor weighs against finding jurisdiction.

### 8.  Balancing of Factors

1    Overall, this is a close case.  Factors one, four, and six

2  weigh in favor of finding jurisdiction.  Factors two, five, and

3  seven weigh against finding jurisdiction.  However, defendant bears

4  a heavy burden in proving that the Court cannot constitutionally

5  find jurisdiction: "Once purposeful availment has been established,

6  the forum's exercise of jurisdiction is presumptively reasonable.

7  To rebut that presumption, a defendant 'must present a compelling

8  case' that the exercise of jurisdiction would, in fact, be

9  unreasonable."  Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir.

10  1991).  The Court finds that Defendants have not met that burden.

11  Some factors do weigh against finding jurisdiction, but on balance

12  Defendants' arguments do not present a "compelling case" against

13  the reasonableness of exercising jurisdiction.

14  **IV.   CONCLUSION**

15    For the foregoing reasons, Defendants' Motion is DENIED.

16

17

18  IT IS SO ORDERED.

19

20

21  Dated: February 3, 2015

22                              DEAN D. PREGERSON
                               United States District Judge

23

24

25

26

27

28